IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FUNG RETAILING LIMITED,
    Appellant,

v.                                                  Civil Action No. 3:18-cv-00632-JAG
                                                    Civil Action No. 3:18-cv-00670-JAG

TOYS "R" US, INC., *et al.*,
    Appellees.

## OPINION

Fung Retailing Limited ("Fung") appeals two orders of the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"). Despite Fung's active participation in the bidding process in the United States to purchase the majority stake in an Asian company, Fung now argues that the Bankruptcy Court lacked personal jurisdiction over it with respect to that process. Because Fung has immersed itself in the bidding process in the United States from start to finish, the Bankruptcy Court properly exercised specific personal jurisdiction over Fung. Accordingly, the Court AFFIRMS the decisions of the Bankruptcy Court.[1]

## I. BACKGROUND

In September, 2017, Toys "R" Us declared bankruptcy.[2] Since then, the Bankruptcy Court has devoted considerable efforts to liquidate TRU's assets. Among other things, the court

---

[1] The Court recognizes that Fung may wish to appeal this matter to the United States Court of Appeals for the Fourth Circuit. Accordingly, the Court has issued this somewhat abbreviated Opinion and Order on an expedited basis to allow Fung to appeal before the scheduled sale hearing in the Bankruptcy Court.

[2] Toys "R" Us consists of a number of debtor entities. The debtors (and appellees here) include Toys "R" Us., Inc.; Toys "R" Us Europe, LLC; Tru Taj LLC; Tru Taj Finance, Inc.; TRU Taj Holdings 1, LLC; TRU Taj Holdings 2, Ltd.; TRU Taj Holdings 3, LLC; TRU Asia, LLC; and

has been overseeing the sale of TRU's majority interest in Toys (Labuan) Holding Limited (the "Asia JV"), which operates Toys "R" Us stores in Asia. Fung, a company incorporated and headquartered in Hong Kong, owns a 15.13% stake in the Asia JV. TRU (UK) Asia Limited (the "TRU Asia JV Partner"), a corporate subsidiary of TRU, owns the other 84.87% stake. A shareholders' agreement between Fung and the TRU Asia JV Partner governs the Asia JV.

Lazard, Frères & Co. LLC ("Lazard"), TRU's New York-based financial advisor, has shepherded the sale of the TRU Asia JV Partner's majority interest in the Asia JV. To accomplish the sale, Lazard conducted a lengthy process that combined aspects of negotiations and auctions. In March, 2018, Lazard began to seek bidders for the asset. Interested parties would tell Lazard how much they would likely pay, and what conditions of sale they would demand. Lazard conducted several rounds of bidding, and after each round, it whittled down the number of participating bidders. Fung, among others, submitted "Non-Binding Indications of Interest" in the rounds of bidding. Fung hung in the process through three rounds. It submitted three decreasing bids: Fung offered between $675 and $775 million on March 14, 2018, between $650 and $750 in the second round, and either $525 or $700 million in the third.[3] Fung conditioned each bid on receiving favorable orders from the Bankruptcy Court. The proposed orders would insure that Fung got clear title to the asset, and would include findings of good faith and other protections under the Bankruptcy Code.

After the third round of bidding supervised by Lazard, Fung no longer participated in the negotiations. Fung's counsel was cagey about whether Fund quit bidding voluntarily or Lazard dropped Fung from the process because of its decreasing bids. Either way, the bidding continued

---

TRU Taj (Europe) Holdings, LLC. The Court will refer to them collectively as TRU. TRU's various entities own subsidiaries who are not themselves debtors.
[3] The third bid offered two different amounts depending on whether the sale included intellectual property.

among other potential buyers, and Lazard eventually selected a "stalking horse" purchaser for a court supervised auction. The stalking horse set a bottom line for the auction by agreeing to buy the TRU Asia JV Partner for $760 million, pursuant to certain terms (the "Stalking Horse Bid"). Lazard selected certain of TRU's creditors as the stalking horse.

The bidding process involved the exchange of large amounts of information as the bidders conducted due diligence investigations. Given the size of the asset and the expected enormous bids, Lazard set up a virtual data room where bidders could get business documents and ask questions about the sale before bidding. Fung was among the first entities to express interest in the sale and to participate in the virtual room. Lazard ultimately granted 72 Fung representatives access to the room.[4] From March to August 2018, Fung submitted 279 due diligence requests to Lazard. Fung logged into Lazard's diligence data room approximately 1,200 times and downloaded approximately 100,000 documents from the data room. Fung's United States-based legal and financial advisors also sent 100 emails to Lazard and had 15 phone conferences with Lazard.

On August 4, 2018, TRU took steps to move ahead with the sale of the TRU Asia JV Partner's interest. TRU moved the Bankruptcy Court to invalidate Fung's Right of First Refusal ("ROFR") in the Partner's interest, which Fung held pursuant to a shareholder's agreement with the Partner. TRU also moved the Bankruptcy Court to approve the Stalking Horse Bid.

Although Fung had dropped out of the bidding process, at this point it jumped back into the fray to prevent the sale. Fung claimed to be concerned because the Stalking Horse Bid would strip the TRU Asia JV Partner of all its assets. On August 23, 2018, therefore, Fung filed a

---

[4] Like all participants in the virtual room, Fung executed a confidentiality agreement regarding the TRU information. In the agreement, Fung consented to jurisdiction in New York or the Bankruptcy Court for suits arising from violation of the terms.

3

limited jurisdictional objection to TRU's motion, arguing that the bankruptcy court lacked personal jurisdiction over Fung and could not invalidate its ROFR.

On the same day, Fung commenced arbitration in Hong Kong against the TRU Asia JV Partner for breach of the shareholders' agreement. In this proceeding, Fung asked arbitrators declare that, regardless of the outcome of the bankruptcy sale, it could still exercise its ROFR. It also asked the arbitrators to determine the value of the Stalking Horse Bid,[5] which would trigger the amount Fung would need to pay to exercise its ROFR. If Fung prevailed on its argument, it would essentially encumber the asset sold by the Bankruptcy Court.

Fung tried to interfere in the Bankruptcy Court sale in another way. It asked the arbitrator to require the proceeds of any sale to remain in the Asia JV, instead of going through the Bankruptcy Court to TRU's creditors.

The Bankruptcy Court held a hearing on TRU's motion to invalidate the ROFR on September 6, 2018. At the hearing, the court declined to invalidate the ROFR and overruled Fung's personal jurisdiction objection. The court noted "the immersion of Fung in the bidding process," and the execution of the confidentiality agreement. A. 383-84. By these actions, it held, Fung had "subject[ed] itself to the process that's being supervised by this Court." A. 384. On September 14, 2018, the court entered an order approving the Stalking Horse Bid and scheduling a final sale hearing, which will occur on November 5, 2018 (the "Bidding Procedures Order").

On September 10, 2018, TRU commenced an adversary proceeding against Fung in the Bankruptcy Court and filed an expedited motion to (1) extend the automatic stay as to the Asia

---

[5] According to Fung, the arbitrator must determine the value of the Stalking Horse Bid. Fung says the true value differs from the stated amount of the bid, because the bidder (a TRU creditor) will pay part of the consideration by forgiving debt.

4

JV and the TRU Asia JV Partner and (2) enjoin Fung from continuing the Hong Kong arbitration.[6]

In response, Fung tried another tactic to impede the Bankruptcy Court's sale of the asset. Fung secured an *ex parte* injunction from the High Court of Hong Kong on September 18, 2018. Fung told the High Court that it needed to move fast (and without notice to its opponents) to avoid the effects of the Bankruptcy Court auction that Fung had unsuccessfully participated in. Fung said "the U.S. Court will (on 20 September 2018) make an order on the Second U.S. Application, the objective of which will be to seek to fetter the ability of [Fung] to appear again before this Court for the purpose of pro-actively seeking a continuation of any time-limited *ex parte* injunction granted on this application." A. 738 ¶ 81. On the same day, the High Court issued a temporary order, prohibiting TRU from selling the majority stake in the Asia JV unless the TRU Asia JV Partner "deposit[s] an amount to be determined by the Court or the Arbitration tribunal sufficient to secure the payment of any award in favor of Fung." A. 763.

At the same time, Fung continued to try to use the arbitration to foul up the auction. On September 18, 2018, Fung filed an amended request for arbitration in Hong Kong, complaining—among other things—that TRU had wrongfully prevented Fung from conferring with other bidders during the bidding process in the Bankruptcy Court.[7] Fung also indicated that its request "was necessitated by developments in the Bankruptcy Court and the Chapter 11 Cases," referring to the Bidding Procedures Order and TRU's motion for injunctive relief in the Bankruptcy Court. A. 750-51 ¶ 19.

---

[6] *Toys "R" Us, Inc., et al. v. Fung Retailing Limited*, Adv. Pro. No. 18-03090-KLP (Bankr. E.D. Va. Sept. 27, 2018).
[7] Lazard would not let Fung confer or team up with other bidders, because the whole idea of the auction involved getting *competitive* bids, not colluded ones.

5

Fung also continued to participate in the bankruptcy proceeding, primarily by protesting that the court lacked jurisdiction over it. Over Fung's objections, the Bankruptcy Court granted TRU's motion for a preliminary injunction at a hearing on September 27, 2018, reaffirming that the court had personal jurisdiction over Fung (the "Injunction Order"). According to the Bankruptcy Court,

> Fung's commencement of arbitration proceedings in Hong Kong before the September 6th hearing and in connection with its ex parte injunction relief . . . were in direct response to the Court's September 6th ruling, and directly are related to the bidding procedures and represent a bidder's attempt to gain control of, and perhaps, even manipulate the bidding process.

A. 972-73. The Injunction Order prohibits Fung from initiating or continuing any proceedings in Hong Kong "relating to the bidding process until the earlier of (a) consummation of a plan of reorganization for [TRU], or (b) December 31, 2018, subject to further extension by the Court." A. 1027 ¶ 3. The High Court's temporary injunction expired on October 12, 2018.

In this appeal, Fung challenges the Bidding Procedures Order[8] and the Injunction Order.[9] Although Fung appeals from two different orders, Fung solely objects to the Bankruptcy Court's personal jurisdiction finding. Fung moved to consolidate and expedite the appeals. TRU moved to dismiss Fung's appeals, arguing that Fung must first file leave to appeal because the Bankruptcy Court's findings of personal jurisdiction do not qualify as final orders. The Court granted Fung's motion to expedite the appeals, ordered the parties to brief the merits on an expedited basis, and held a hearing on all pending matters on October 23, 2018.[10]

---

[8] *Fung Retailing Limited v. Toys "R" Us, Inc., et al.*, No. 3:18-cv-632 (E.D. Va. Sept. 17, 2018).
[9] *Fung Retailing Limited v. Toys "R" Us, Inc., et al.*, No. 3:18-cv-670 (E.D. Va. Oct. 1, 2018).
[10] Although Fung maintains that the Bidding Procedures Order and Injunction Order qualify as final orders, Fung has also moved for leave to appeal.

6

## II. DISCUSSION[11]

### A. Appellate Review

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). Alternatively, parties may seek appellate review of interlocutory orders "with leave of the court." 28 U.S.C. § 158(a)(3). The Fourth Circuit permits "immediate appellate review of orders that 'finally dispose of discrete issues in the larger case.'" *Mort Ranta v. Gorman*, 721 F.3d 241, 246 (4th Cir. 2013) (quoting *McDow v. Dudley*, 662 F.3d 284, 287 (4th Cir. 2011)). "Whether or not to grant leave to appeal an interlocutory order is a discretionary call of the district court." *In re Jackson*, 190 B.R. 808, 810 (W.D. Va. 1995).

#### 1. Bidding Procedures Order

Orders denying a motion to dismiss for lack of personal jurisdiction qualify neither as final orders nor as non-final orders appropriate for interlocutory appeal. *Rux v. Republic of Sudan*, 461 F.3d 461, 474-75 (4th Cir. 2006); *see also In re Am. Freight Sys., Inc.*, 153 B.R. 316, 318-19 (D. Kan. 1993) (citing *In re Magic Circle Energy Corp.*, 889 F.2d 950, 954 (10th Cir. 1989)) ("The appellant must wait until the bankruptcy court enters final judgment before it can appeal the question of personal jurisdiction."). Because Fung appeals the Bankruptcy Court's finding of personal jurisdiction, the Bidding Procedure Order does not qualify as a final order.

District courts, however, may hear appeals of interlocutory bankruptcy orders "with leave of the [district] court." 28 U.S.C. § 158(a). District courts "regularly look by analogy to the standard announced in 28 U.S.C. § 1292(b), which governs interlocutory appeals in non-

---

[11] Appellate courts review the factual findings of the bankruptcy court for clear error and review questions of law de novo. *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005).

7

bankruptcy cases." *In re Health Diagnostic Lab., Inc.*, No. 3:17-cv-297-HEH, 2017 WL 2129849, at *2 (E.D. Va. May 16, 2017). Courts grant leave to appeal under § 1292(b) when "(i) the order involves a controlling question of law, (ii) as to which there is substantial ground for difference of opinion, and (iii) immediate appeal would materially advance the termination of the litigation." *First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*, 470 B.R. 364, 373 (E.D. Va. 1996) (citing 28 U.S.C. § 1292(b)).

First, an issue of law qualifies as "controlling" when "either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *In re Health Diagnostic Lab., Inc.*, 2017 WL 2129849, at *3. If the Court finds that the Bankruptcy Court lacks personal jurisdiction over Fung, the Bankruptcy Court would lack any authority to control Fung's behavior in the United States or in Hong Kong with respect to the bidding process. Accordingly, the Court's decision "as a practical matter" will materially affect the outcome of the bidding proceedings in the Bankruptcy Court. *Fannin v. CSX Transp., Inc.*, No. 88-8120, 1989 WL 42583, at *5 (4th Cir. 1989). The Bidding Procedures Order, therefore, involves a controlling question of law for the purposes of interlocutory appellate review.

Second, the Bankruptcy Court, TRU, and Fung present arguments of "substantial force" regarding personal jurisdiction that "rise to the level necessary to create a substantial ground for difference of opinion." *First Owners' Ass'n*, 470 B.R. at 373. Finally, immediate appeal in this case would materially advance the termination of the litigation by allowing the sale to go through. Because the Bankruptcy Court's personal jurisdiction finding in the Bidding Procedures Order "dispose[s] of [a] discrete issue[] in the larger case," the Court will grant Fung's motion for leave to appeal the Bidding Procedures Order. *Mort Ranta*, 721 F.3d at 246.

8

## 2. Injunction Order

"[T]he denial of relief from [an] automatic stay is a final, appealable order." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001). In the bankruptcy context, courts have found that an injunction order "constitutes an appealable final decision." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1092 (9th Cir. 2007); *see also In re Lomas Fin. Corp.*, 932 F.2d 147, 151 (2d Cir. 1991). The Fourth Circuit has emphasized that "the concept of finality in bankruptcy traditionally has been applied in a 'more pragmatic and less technical way' than in other situations." *Mort Ranta*, 721 F.3d at 246 (quoting *McDow*, 662 F.3d at 287). The Injunction Order prohibits Fung from prosecuting its proceedings in Hong Kong. Given the "pragmatic" approach to finality in the bankruptcy context, the Injunction Order qualifies as an appealable final order.[12] *Id.* Because Fung may appeal both orders, the Court will deny TRU's motions to dismiss.

## B. Personal Jurisdiction

Courts may exercise personal jurisdiction over a foreign party only if that party has sufficient minimum contacts with the United States to satisfy due process standards. *In re Celotex Corp.*, 124 F.3d 619, 630 (4th Cir. 1997). In the bankruptcy context, courts "need only ask whether [the foreign party] has minimum contacts with the United States," not with any particular state. *Id.* These minimum contacts give rise to "two types of personal jurisdiction:

---

[12] Even if the Injunction Order does not qualify as a final order, it meets the requirements for an appealable interlocutory order. Parties in civil proceedings before the district courts may appeal interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions" to the courts of appeals. 28 U.S.C. § 1292(a)(1). District courts, therefore, should grant leave to appeal interlocutory orders by the bankruptcy courts that grant, continue, modify, refuse, or dissolve injunctions. *See First Owners' Ass'n*, 470 B.R. at 372. Because the Injunction Order enjoins Fung from prosecuting its Hong Kong proceedings, the Court alternatively exercises its discretion to hear the appeal under § 1292(a)(1). The Court, therefore, will grant Fung's motion for leave to appeal the Injunction Order.

'general' . . . and 'specific.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). The parties agree that the Bankruptcy Court lacks general jurisdiction over Fung.

Specific jurisdiction exists when the claims "arise out of or relate to" the foreign party's contacts with the United States. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Three prongs guide specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the [forum]; (2) whether the plaintiff's claims arise out of those activities directed at the [forum]; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

*1. Purposeful Availment*

To be subject to personal jurisdiction in the Bankruptcy Court, a defendant must have "purposefully availed itself of the privilege of conducting the activities within the [United States]." *Burger King*, 471 U.S. at 475. The Bankruptcy Court cannot hale a defendant into its jurisdiction because of "random, fortuitous, or attenuated contacts" or some "unilateral activity of another party or a third person." *Id.* Accordingly, the analysis focuses on "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The defendant must expressly target the forum. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

Courts examine several factors when reviewing whether a defendant purposefully availed itself, but the parties' arguments largely touch on two: (1) whether Fung reached into the United States "to solicit or initiate business;" and (2) "the nature, quality and extent of the parties'

communications about the business being transacted." *Consulting Eng'rs*, 561 F.3d at 278. The purposeful availment requirement "is not susceptible of mechanical application," *id.*, and courts must weigh "the totality of the facts before" them. *Univ. Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014).

The relevant business transaction in this case concerns the proposed sale of the majority stake of the Asia JV taking place in the Bankruptcy Court. Fung has actively and "repeatedly reached into" the United States regarding that transaction. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 304 (4th Cir. 2012) (per curiam). Fung participated in three rounds of bidding in the Bankruptcy Court and conditioned each bid on receiving orders from the Bankruptcy Court, including findings of good faith and other protections under the Bankruptcy Code. Over a five-month period, Fung submitted 279 due diligence requests to Lazard, accessed Lazard's due diligence data room 1,200 times, and downloaded 100,000 documents. Moreover, Fung signed a Confidentiality Agreement with respect to the diligence documents, agreeing to submit to jurisdiction in New York or the Bankruptcy Court for any violation of that agreement. Fung sent 20 emails to TRU and their United States-based advisors, and Fung's advisors sent 100 emails to Lazard and had 15 phone calls with Lazard. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (noting that a foreign party "can purposefully avail itself of a forum by directing its agents or distributors to take action there").

Fung did much more here than send a few sporadic emails to TRU and their advisors. *Cf. DeCusati v. Reiss Eng'g, Inc.*, No. 3:15-cv-204-JAG, 2015 WL 4622494, at *3 (E.D. Va. July 30, 2015) (finding no specific jurisdiction when the defendant's "Internet activity outside of email communication include[d] only a passive website"). Fung made its extensive contacts

11

with a singular purpose in mind: to purchase the majority stake in the Asia JV in the Bankruptcy Court.

The dispute here concerns the bidding process in the Bankruptcy Court and Fung's extensive participation in that process in the United States. This sharp focus distinguishes this litigation from cases where jurisdiction did not exist because "the parties' interaction was overwhelmingly abroad." *Tire Eng'g*, 682 F.3d at 302 (citing *Consulting Eng'rs*, 561 F.3d at 273). Based on Fung's immersion in the bidding process, which forms the "gravamen of this dispute," Fung "should have 'reasonably anticipate[d] being haled into court in [the United States].'" *Id.* at 305 (quoting *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002)). Accordingly, Fung purposefully availed itself of the privilege of conducting activities in the United States.

*2. Whether the Claims Arise out of Activities Directed at the Forum*

"Where activity in the forum state is the genesis of [the] dispute, [the second prong] is easily satisfied." *Id.* at 303 (citing *CFA Inst.*, 551 F.3d at 295). "A plaintiff's claims ... arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.* For a claim to arise out of contacts with the United States, the contacts must form "the basis for the suit." *ALS Scan, Inc.*, 293 F.3d at 712.

Fung tries to disaggregate its many contacts in the United States with its activities in Hong Kong, but its overall course of conduct relates to its desire to purchase the Asia JV, by either winning or derailing the auction. Indeed, TRU needed an injunction against Fung in the Bankruptcy Court because Fung's legal proceedings in Hong Kong could sabotage or stop the proceedings in the United States. Moreover, Fung's Hong Kong litigation referred to the

proceedings in the Bankruptcy Court. In Fung's request for arbitration, for example, it indicated that its action "was necessitated by the foregoing developments in the Bankruptcy Court and the Chapter 11 Cases, particularly [TRU's] filing of the Motion [for the Bidding Procedures Order]." A. 446 ¶ 19.

From the start, Fung has engaged in a "purposeful effort" to buy the Asia JV and has immersed itself in the bidding process in the Bankruptcy Court. *CFA Inst.*, 551 F.3d at 296. The claims in this case thus "arise out of activities directed at the forum" because Fung engaged in "substantial correspondence and collaboration" with TRU and their United States-based advisors, which "forms an important part of the claim." *Tire Eng'g*, 682 F.3d at 301.

When the Bankruptcy Court issued its Injunction Order, it noted that Fung's arbitration proceedings and *ex parte* injunction "represent a bidder's attempt to gain control of, and perhaps, even manipulate the bidding process." A. 973. After Fung made unsuccessful bids for the Asia JV in the United States, it commenced various legal proceedings in Hong Kong designed to thwart the bidding process. Fung cannot now argue that TRU's claims in the Bankruptcy Court do not arise out of its contacts with the United States.

### 3. Constitutional Reasonableness

Finally, courts consider whether subjecting a foreign party to suit in the United States would be "'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (quoting *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001)). "The burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide [the] inquiry." *Tire Eng'g*, 682 F.3d at 303.

The Bankruptcy Court's exercise of personal jurisdiction over Fung in the United States regarding the bidding process is constitutionally reasonable. Fung has engaged "able counsel" in the United States to represent its interests, and its "defense of a suit" in the Bankruptcy Court "is not particularly burdensome." *Id.* at 305. Additionally, the United States has a significant interest in "[c]entralization of disputes concerning a debtor's legal obligations . . . 'so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'" *In re White Mountain Mining Co.*, 403 F.3d 164, 169-70 (4th Cir. 2005) (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990)). Given Fung's active participation in the bidding process and its extensive contacts with the United States, the Court finds that exercising personal jurisdiction over Fung does not "offend 'traditional notions of fair play and substantial justice.'" *Bristol-Myers*, 137 S. Ct. at 1785 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### III. **CONCLUSION**

The Bankruptcy Court appropriately subjected Fung to personal jurisdiction in the United States with respect to the bidding process. Accordingly, the Court will affirm the decisions of the Bankruptcy Court.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 25 October 2018
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge

14